ESTATE OF JOSEPH R. LEVINE, DECEASED, ROSE LEVINE, EXECUTRIX, AND ROSE LEVINE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Levine v. Commissioner
Docket No. 5993-78.
United States Tax Court
T.C. Memo 1982-5; 1982 Tax Ct. Memo LEXIS 735; 43 T.C.M. (CCH) 259; T.C.M. (RIA) 82005; January 11, 1982. Rose Levine, pro se. Harvey S. Sander, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined deficiencies in petitioners' Federal income taxes as follows: Year
Deficiency in Income Tax
1968
$ 1,936.42
1969
2,422.84
1970
1,412.02
1971
1,296.78
The issues for decision involve whether certain expenditures are deductible as medical expenses under section 213. [1]
*736 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Joseph Levine and Rose Levine were husband and wife during the years in question. They timely filed their joint Federal income tax returns for the years 1968 through 1971, inclusive, with the Internal Revenue Service Center in Andover, Massachusetts. Sometime before the petition in this case was filed, Mr. Levine died and Mrs. Levine was appointed as executrix of his estate. At the time the amended petition was filed in this case, Rose Levine resided in Long Beach, New York. The term "petitioners" will hereinafter refer to Rose Levine and the late Joseph Levine. Petitioners' daughter, Marci, was born in November of 1950. When Marci was 13 years old, she developed a serious emotional disturbance or mental condition as a result of which she was severely depressed and withdrawn. In 1967 when whe was 16 years old, Marci secluded herself in the house for the whole year and made no attempt to get involved in life. Throughout that period, Marci never looked outside through doors or windows and watched *737 only the activities of her two sisters. During this time, Marci's parents could not have anyone around her other than the immediate family. Marci left the house only a few times during 1967 to visit different doctors. However, traditional medical treatment from psychiatrists did not improve Marci's condition. By the end of 1967, Joseph Levine had given up on Marci and decided that she should be put in a hospital in order to get her out of the house. However, Marci did not want to go into a hospital and petitioner prevented her husband and doctors from placing Marci in an institution. Around this time, Marci began to improve somewhat and started to look outside through doors and windows and to take walks and drives with her mother and sisters. Shortly thereafter, Marci was persuaded to leave the house and take a trip to Atlantic City with her mother and sisters. While in Atlantic City, Marci participated in some recreational activities with her sisters and met other people. Sometime during the trip to Atlantic City, petitioner decided, independently of any doctor's advice, that the only way to get Marci involved in life and to improve her mental condition was to travel with *738 her to different places in search of schools and activities in which she could become involved. Petitioner did not believe that Marci's condition would improve if she returned home or went to a hospital or institution. Accordingly, petitioner and one of her other daughters stayed with Marci in Atlantic City in motels and a house from late fall of 1967 until the summer of 1968. Throughout most of this period, Marci stayed inside the motel rooms and house. During the summer of 1968, petitioner and Marci stayed in motels near South Hampton College, and Marci went on drives with her mother and went swimming and bicycling. From the fall of 1968 through the spring of 1969, petitioner and Marci traveled to various southern cities in search of special schools for Marci. Sometime during that period, Marci enrolled in an adult school, joined a health club, and did well both academically and socially. Petitioner and Marci spent the summer of 1969 in motels near South Hampton College, and Marci apparently participated in activities similar to those in which she had engaged during the summer of 1968. From the fall of 1969 through April or May of 1970, petitioner and Marci stayed in New *739 York City. During this period, Marci went shopping, took walks, and attended dancing school. Near the end of her stay in New York City, Marci decided that she was ready to go back to school. Petitioner and Marci thus spent the summer of 1970 traveling to various locations in Connecticut and Rhode Island in search of a school for Marci. In early fall of 1970, Marci attended a hospital program for young adults in Philadelphia, Pennsylvania, but disliked the program and left after only 10 days. From the fall of 1970 through the end of 1971, Marci attended two different colleges in New Hampshire on a full-time basis. Nevertheless, during this same time, petitioner and Marci stayed in various motels in New York, Florida, Massachusetts, New Jersey, and Vermont. On their Federal income tax returns for the years 1968 through 1971, petitioners listed the following expenditures made during the travels with Marci and deducted the total amount of them as medical expenses paid for Marci: motels, rent, long distance telephone calls, shipping charges for clothing and kitchen utensils, automobile mileage, train and bus fares for various family members, housekeeper, health studio, dancing *740 school, babysitter, television rental, records, beauty aids, and electricity. None of these expenditures were incurred pursuant to the advice or suggestion of any doctor. In his statutory notice of deficiency, respondent disallowed all of the claimed deductions for Marci as personal expenses under section 262 rather than medical expenses under section 213. Throughout most of the time that Marci and her mother were traveling, Joseph Levine stayed at home with the other two daughters. However, he took a number of trips to Atlantic City and Florida during each of the years 1968 through 1971. The record does not show the purpose or the amount spent for each individual trip. The record does show that Joseph Levine took two trips to Atlantic City and one trip to Florida during 1968, two trips to Atlantic City and two trips to Florida during 1969, and an unspecified number of trips to both areas during each of the years 1970 and 1971. He made some of these trips to visit his wife and daughter during their travels. He made other trips at the recommendation of a doctor who had suggested that it might help a heart condition that he had had since the first days of his marriage at least *741 18 years earlier. The record is silent as to when the doctor gave that advice or as to the specific nature of the advice. During 1968 and 1969, Joseph Levine paid various individuals to watch his other two daughters during his trips to Atlantic City and Florida. In addition, he incurred expenditures in the years 1968 through 1971 for massages, sun lamp, and liquor allegedly recommended by his physician. On their Federal income tax returns for the years 1968 through 1971, petitioners deducted the cost of all of the husband's trips to Atlantic City and Florida, massages, sun lamp, and liquor as medical expenses related to his heart condition. On their tax returns for the years 1968 and 1969, petitioners also deducted as medical expenses amounts paid to the individuals who watched their other two daughters during the father's trips. Respondent disallowed all of these claimed deductions as personal and family expenses except for $ 90 of unspecified travel expense during 1970. OPINION Section 262 provides that no deduction shall be allowed for personal, living, or family expenses except as otherwise provided in chapter 1 of the Code. Section 213(a) carves out a limited exception *742 to section 262 and allows a deduction for expenses paid during the taxable year for the "medical care" of the taxpayer, his spouse, and dependents to the extent that such expenses exceed three percent of the taxpayer's adjusted gross income and are not compensated for by insurance or otherwise. Section 213(e)(1)(A) and (B) define the term "medical care" as amounts paid for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body, and for transportation primarily for and essential to such medical care. Petitioners have the burden of establishing that they are entitled to their claimed deductions for medical expenses. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
The parties agree that Marci's severe depression constituted a mental disease or disorder for purposes of section 213(e)(1)(A) and section 1.213-1(e)(1)(ii), Income Tax Regs.[2] Petitioners argue that traveling to different environments was the only way to treat Marci's mental condition and *743 that the lodging and miscellaneous expenses incurred during that travel therefore constituted deductible medical expenses. Respondent contends that such expenses are personal in nature and are not deductible either as amounts paid for medical care under section 213(e)(1)(A) or as amounts paid for transportation primarily for and essential to medical care under section 213(e)(1)(B). Respondent further argues that even if the travel itself is held to constitute medical care, the lodging and related expenses incurred during such travel would be nondeductible as expenses incurred while away from home receiving medical care under section 1.213-1(e)(1)(iv), Income Tax Regs.
To constitute a deductible expenditure for medical care under section 213(e)(1)(A), an amount must be paid for goods or services directly or proximately related to the diagnosis, cure, mitigation, treatment, or prevention of the *744 disease or illness. To qualify under section 213(e)(1)(B), an amount must be paid for transportation primarily for and essential to "medical care" as defined in section 213(e)(1)(A). To establish deductibility under either provision, petitioners must prove both that the expenditures were an essential element of the medical treatment and that they would not otherwise have been incurred for nonmedical reasons. An expenditure that is merely beneficial to the general health of the individual is not an expenditure for medical care. The determination of what constitutes medical care depends on the nature of the services rendered rather than on the experience, qualifications, and title of the person rendering such services. Moreover, where an expenditure is so personal in nature that it only rarely loses its identity as a personal expense, the determination of whether that expenditure is medical or personal in nature is primarily one of fact. Gerstacker v. Commissioner, 414 F. 2d 448, 450 (6th Cir. 1969), revg. and remg. 49 T.C. 522 (1968); Jacobs v. Commissioner, 62 T.C. 813, 818-819 (1974); Volwiler v. Commissioner, 57 T.C. 367 (1971); *745 Stringham v. Commissioner, 12 T.C. 580 (1949), affd. per curiam 183 F. 2d 579 (6th Cir. 1950); Havey v. Commissioner, 12 T.C. 409, 412 (1949). [3]
The record in the present case shows that no doctor prescribed that any of the expenditures be made for Marci, that petitioner independently decided that the only way to improve her daughter's condition was through extensive travel in search of new environments and new activities in which Marci could become involved, and that Marci's condition did in fact improve during those travels. These expenditures may well have been beneficial to Marci's general health. However, such a benefit does not render those expenditures deductible expenses for medical care. Sec. 1.213-1(e)(1)(ii) and (iv), Income Tax Regs.[4]
*746 There is no evidence that an essential part of the treatment of Marci's mental illness consisted of extensive traveling and related expenditures for lodging, long distance telephone calls, shipping charges for clothing and kitchen utensils, and automobile use. Other than a brief stay at a hospital program for young adults in Philadelphia in the fall of 1970, none of the motels, schools, or activities herein had any special medical facilities or rendered any medical or psychiatric services or treatment to Marci. The only care that Marci received throughout these travels was the devoted care of her mother. Marci's mental illness might have improved just as much had she stayed home with her family, received the same devoted attention from her mother, and become involved in local schools and activities. In fact, the record shows that before petitioner and Marci went to Atlantic City for their first trip, Marci had already begun to improve by looking outside through doors and windows and by leaving the house to take walks and drives with her mother and sisters. Despite petitioner's sincere belief to the contrary, we are not persuaded that the travel and related expenses were essential *747 to the treatment of Marci's illness. We are certainly not persuaded that the travel itself constituted medical treatment. Volwiler v. Commissioner, supra.[5]
Furthermore, the following expenses would almost certainly have been incurred by petitioners even without Marci's illness: rent, electricity, housekeeper, babysitters, records, television rental, beauty aids, health studio, dancing school, and various bus and train fares for family members. All of these expenditures were primarily personal in nature. They were only incidentally related to Marci's specific illness, and would in all likelihood have been incurred by petitioners even if Marci had not been ill. The fact that Marci needed to get involved in life in order to improve her mental condition and that her mother chose to incur various expenditures to get her involved does not convert personal expenditures into deductible medical expenses. Nor are the expenditures deductible under section 213(e)(1)(B) as amounts paid for transportation primarily for and essential to medical care as defined in section 213(e)(1)(A). Section *748 1.213-1(e)(1)(iv), Income Tax Regs., provides that: Expenses paid for transportation primarily for and essential to the rendition of the medical care are expenses paid for medical care. However, an amount allowable as a deduction for "transportation primarily for and essential to medical care" shall not include the cost of any meals and lodging while away from home receiving medical treatment. For example, if a doctor prescribes that a taxpayer go to a warm climate in order to alleviate a specific chronic ailment, the cost of meals and lodging while there would not be deductible. On the other hand, if the travel is undertaken merely for the general improvement of a taxpayer's health, neither the cost of transportation nor the cost of meals and lodging would be deductible. * * * Therefore, while all expenditures, meals, and lodging required to bring an individual to the place of medical care are deductible, no expenditures for meals and lodging while the individual is away from home receiving such medical care are allowable under section 213. Commissioner v. Bilder, 369 U.S. 499 (1962); Montgomery v. Commissioner, 428 F. 2d 243 (6th Cir. 1970), *749 affg. 51 T.C. 410 (1968). The record shows that no medical care, as defined in section 213(e)(1)(A), was rendered to Marci during her travels. Even if medical care had been rendered to Marci, however, the expenditures herein for transportation and lodging would fail to qualify under section 1.213-1(e)(1)(iv), Income Tax Regs. Although expenses for transportation and lodging incurred while en route to a place of medical care are deductible, here there was no specific destination to which petitioner and Marci were traveling for medical treatment. On the contrary, their travel constituted merely an indefinite hegira, seeking new environments and activities in which Marci could get involved. Even if the constant traveling itself constituted medical care rendered to Marci, all lodging expenses incurred during those travels would be nondeductible since they would be incurred while Marci was "away from home receiving medical treatment." Sec. 1.213-1(e)(1)(iv), Income Tax Regs.
It is true, as petitioners argue, that they could have deducted the costs of placing Marci in certain types of institutions as medical expenses. Sec. 1.213-1(e)(1)(v), Income Tax Regs. However, that *750 possibility has no bearing on the deductibility of the particular expenses herein. It is Congress and not this Court that prescribes the types of expenditures that will be deductible under section 213. While we sympathize with petitioners' situation, they have failed to make the requisite showing to bring the travel and related expenses herein within the definition of medical care for purposes of either section 213(e)(1)(A) or 213(e)(1)(B). The second issue for decision is whether amounts paid for trips to Atlantic City and Florida, massages, sun lamp, and liquor for Joseph Levine are deductible as medical expenses. Petitioners argue that these expenditures are deductible medical expenses since they were all essential to the treatment of his heart condition and since the trips and liquor were allegedly prescribed by his doctor for that condition. Respondent argues that all of these expenditures were personal in nature. The record does show that Joseph Levine's doctor had apparently advised him at one time to go to a warm climate for his heart condition. However, the fact that a doctor prescribes some course of procedure for a chronic illness of a patient does not automatically *751 render the cost of that procedure deductible under section 213. Jacobs v. Commissioner, supra at 819; Volwiler v. Commissioner, supra at 370; Atkinson v. Commissioner, 44 T.C. 39, 54 (1965). The record shows that Joseph Levine took two trips to Atlantic City and one trip to Florida in 1968, two trips to Atlantic City and two trips to Florida in 1969, and an unspecified number of trips to both areas during each of the years 1970 and 1971. He made some of these trips to visit his wife and daughter during their travels and some trips because his doctor had suggested that a warm climate would help his heart condition. The record does not show when the doctor gave Joseph Levine the advice about the benefits of a warm climate, or the exact nature of the advice or recommendation given by the doctor. However, the record shows that Joseph Levine had suffered from a heart condition since the early days of his marriage. On the inconclusive record in this case, we cannot find that these trips constituted medical care under section 213(e)(1)(A) or transportation primarily for and essential to medical care under section 213(e)(1)(B). *752 As for petitioners' expenditures for massages, sun lamp, and liquor, again the record does not establish that these expenditures were directly or proximately related to Joseph Levine's heart condition. We hold that such expenditures were primarily, if not exclusively, personal in nature and were in no way necessary to the treatment of his heart condition. Accordingly, none of those amounts are deductible medical expenses under section 213. With respect to the final issue, the amounts paid by petitioners to various individuals to watch their other two daughters during Joseph Levine's trips to Atlantic City and Florida were nondeductible personal expenses. The record clearly shows that such amounts were paid for babysitting petitioners' other two daughters and not for any medical care for either the father or Marci. The fact that such expenditures in part enabled Joseph Levine to travel to Atlantic City or to Florida does not transform the nature of these expenditures into deductible expenses for "medical care" for purposes of section 213. Wendell v. Commissioner, 12 T.C. 161 (1949). [6]
*753 To reflect the holdings herein, Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years here involved.↩
2. This Court has previously held that a "severe depression" constituted a mental disease or disorder within the meaning of section 213(e)(1)(A). Jacobs v. Commissioner, 62 T.C. 813, 818 (1974); Fischer v. Commissioner, 50 T.C. 164, 173↩, fn. 4 (1968).
3. See also Tautolo v. Commissioner, T.C. Memo. 1975-277↩.
4. Sec. 1.213-1(e)(1)(ii), Income Tax Regs., provides in pertinent part: However, an expenditure which is merely beneficial to the general health of an individual, such as an expenditure for a vacation, is not an expenditure for medical care. Sec. 1.213-1(e)(1)(iv), Income Tax Regs., provides in part: [I]f the travel is undertaken merely for the general improvement of a taxpayer's health, neither the cost of transportation nor the cost of meals and lodging would be deductible. * * *↩
5. See also Levine v. Commissioner, T.C. Memo. 1981-437↩.
6. See also Martin v. Commissioner, T.C. Memo. 1960-140; Rev. Rul. 78-266, 1978-2 C.B. 123↩.